1
2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3
4
5
6
7
8

Marlo J. Watson,

           Plaintiff,

vs.

NCO Financial Systems, Inc.,

           Defendant.

Case No.: 14-cv-1755-JAD-VCF

**Order Granting in Part Plaintiff's
Amended Motion for Attorney Fees
[Doc. 19]**

9
10
11
12
13
14
15
16

      Plaintiff Marlo J. Watson sued Defendant NCO Financial Systems after a Las Vegas Valley hospital misidentified her, resulting in Watson's accounts being sent to collections for services she never received.  She sued NCO under the Fair Debt Collection Practices Act (FDCPA).[1]  Before any dispositive motions were filed, NCO made Watson an offer of judgment under Federal Rule of Civil Procedure 68 for $1,001.00 plus "reasonable costs and reasonable attorney's fees, accrued to the date of this Offer of Judgment, either as agreed to by Defendant and Plaintiff, or, in the event Defendant and Plaintiff cannot agree, as determined by the Court on application by Plaintiff."[2] Watson timely accepted the offer and filed a bill of costs.[3]

17
18
19
20

      When the parties were unable to agree on a reasonable fee award, Watson filed a motion that I denied without prejudice to Watson's right to refile with better evidentiary support.[4]  I now consider that renewed motion,[5] find it suitable for disposition without oral argument,[6] grant it in part, and award Watson $6,375 in attorneys fees.

21
22
23
24
25
26
27
28

---

[1] Doc. 1.

[2] Doc. 8.

[3] Doc. 12.  NCO did not object to the bill of costs, and $445 in costs have now been taxed. Docs. 13 at 1; 18.

[4] Docs. 11, 17.

[5] Doc. 19.

[6] L.R. 78-2.

**Discussion**

Determining attorney's fees is a two-step process.  First, to assess the reasonableness of fees under the lodestar method, I compute a reasonable fee by multiplying (1) "the number of hours reasonably expended in the litigation" by (2) a "reasonable hourly rate."[7]  In the second step, I determine whether the lodestar amount should be increased or reduced in light of the factors first outlined in *Kerr v. Screen Extras Guild, Inc.* not already incorporated into the lodestar calculation.[8]  These factors, which are incorporated into this district's local rule 54-16,[9] are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[10]

"This circuit requires that courts reach attorneys' fee decisions by considering some or all of" the *Kerr* factors, and "[a] mere statement that the court has considered the *Kerr* guidelines does not make a decision within the court's discretion."[11]  Nevertheless, the lodestar should only be modified in exceptional cases.[12]

**A.      Reasonable hourly rate**

An hourly rate is reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[13]  Watson

---

[7] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[8] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014).

[9] *Carter*, 757 F.3d at 868 (quotation omitted).

[10] *Id.* at 869.

[11] *Id.* at 868–69.

[12] *City of Burlington v Dague*, 505 U.S. 557, 562 (1992).

[13] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).  *See also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206-07 (9th Cir. 2013) (applying lodestar test to paralegals).

1  asks for $8,312.50[14] for the work of four attorneys: Mark Bourassa, Trent L. Richards, Hillary Ross,

2  and Kim Cooper;[15] and two paralegals: Hilary Steward and Kristi Bourassa.[16]

3          To support his requested fees, Bourassa declares that his law firm entered into a "modified

4  hourly/contingent fee contract . . . which, in pertinent part, allows the Firm to recover fees incurred

5  on an hourly basis at $350 per hour for attorney work and $125 per hour for paralegal work."[17]  He

6  attaches a minute order from a 2012 Nevada state law case that set his billing rate at $400 per hour,

7  Richards's billing rate at $350 per hour, and Ross's billing rate at $250 per hour.[18]  Bourassa never

8  submits any evidence that Cooper's $350 rate is reasonable.  With her reply, Watson submits

9  Bourassa's supplemental declaration in which he names the two paralegals and notes they both have

10  paralegal certificates.[19]  Although this evidence of a reasonable rate is thin, I note that the $350 and

11  $125 requested rates have recently been found reasonable by other Las Vegas trial courts in FDCPA

12  cases,[20] and I find no reason to deviate from the general trend.

13  **B.      Reasonable hours expended**

14          To show that hours are reasonable under the lodestar calculation, a movant must "submit

15  evidence supporting the hours worked."[21]  "Where the documentation of hours is inadequate, the

16  district court may reduce the award accordingly."[22]  Ultimately, "the district court has discretion in

17  _____

18          [14] Doc. 19.

19          [15] Doc. 19-1.

20
21          [16] Docs. 19-1, 21-2.  NCO argues in its response that Watson may not recover for any of the
6.3 hours of paralegal time because Watson fails to disclose their qualifications (or even their
names).  Doc. 20 at 5.  Bourassa's supplemental affidavit resolves this concern to my satisfaction.

22          [17] Doc. 19-1.

23          [18] Doc. 19-3.

24          [19] Doc. 21-2 at 2–3.

25
26          [20] *See Fitzsimmons v. Rickenbacker Financial, Inc.*, 2012 WL 3994477, at *4 (D. Nev. Sept.
11, 2012).

27          [21] *Hensley*, 461 U .S. at 433;  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir.
2007) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)).

28          [22] *Id.*

1  determining the amount of a fee award . . . .  But [i]t remains important . . . for the district court to

2  provide a concise but clear explanation of its reasons for the fee award."[23]

3        Bourassa declares that four attorneys worked on Watson's case: himself (0.2 hours),

4  Richards (2.2 hours), Ross (0.4 hours), and Cooper (18.7 hours).[24]  Bourassa's firm also used the

5  services of paralegals Steward and Bourassa for a total of 6.3 hours.[25]  These hours are supported by

6  itemized billing invoices from both the Bourassa Law Group and the Cooper Law Group, Ltd.,

7  which Bourassa declares he has reviewed and are reasonable.[26]

8
9        **1.    *Fees incurred after December 1, 2014, are excluded under the offer of judgment's
           plain language.***

10        NCO argues that it should not be held liable for any attorney's fees incurred after the offer of

11  judgment, in light of the fact that the offer of judgment provided for attorney's fees "accrued to the

12  [December 1, 2014] date of this Offer of Judgment."[27]  I agree and thus exclude all fees related to

13  work performed after December 1, 2014:[28] 4.4 hours from Cooper (totaling $1,540), 0.6 hours from

14  Bourassa attorneys ($210), and 1.5 hours from Bourassa paralegals ($187.50), for a total of 6.5

15  hours of time valued at $1,937.50.[29]  Although Watson complains that "the additional fees incurred

16  were largely due to Defendant," she elected to accept the offer of judgment as stated and is now

17  bound by its terms.[30]  The fee request will be reduced by $1,937.50.

18        **2.    *The remainder of Watson's requested fees are reasonable.***

19        NCO next argues that the remaining $6,375 in fees (for 16.7 hours of attorney and paralegal

20

21        [23] *Carter*, 757 F.3d at 869 (quoting *Hensley*, 461 U.S. at 437–39).

22        [24] Doc. 19-1 at 5.

23        [25] *Id.* at 5.

24        [26] Docs. 19-1 at 2–3, 19-2.

25        [27] Docs. 8, 20.

26        [28] *See* Doc. 19-2.

27        [29] *See id*. at 2–3, 6–7.

28        [30] *See* Doc. 21 at 6.

time) are disproportionate to the work actually performed.  Although the bulk of time billed to this case was for initial file review and the drafting of a heavily boilerplate complaint,[31] counsel also expended some resources on unsuccessful attempts to settle the case before filing suit.[32]  In light of these efforts, I conclude that the time billed to this case is reasonable in the aggregate.

> ### 3. There is insufficient evidence to show that NCO can avail itself of the "bona fide error" defense at 15 U.S.C. § 1692k such that its fees should be reduced or eliminated.

NCO also argues that Watson's fee award should be reduced because Desert Springs Hospital (where Watson allegedly first incurred her charges) is the more culpable party, and NCO's billing error was unintentional and resulted from its reasonable reliance on Desert Springs.[33]  The FDCPA provides a defense from liability for debt collectors whose error "was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[34]  However, this defense is "narrow," and NCO bears the burden to show it should apply.[35]

NCO attempts to wrest a "concession" from Watson that the creditor and not NCO was the culpable party by pointing to two lines in her motion for attorney's fees where she argues that she "is the unfortunate victim of misidentification by a Las Vegas valley hospital that resulted in Plaintiff's accounts being sent to collections for services she never received."[36]  But NCO never explains how it justifiably relied on the information it received from Desert Springs nor what procedures it had in place to avoid mistakes.[37]  NCO has failed to meet its burden to show its

---

[31] Doc. 1.

[32] Doc. 21-1 at 2–3.

[33] Doc. 20 at 2.

[34] 15 U.S.C. § 1692k(c); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (interpreting 15 U.S.C. § 1692k).

[35] *See Clark*, 460 F.3d at 1177.

[36] Doc. 19 at 2.

[37] The only other evidence in the record indicating that NCO seeks to avail itself of this bona fide error defense is an affirmative defense in its answer. *See* Doc. 6 at 4.

1    entitlement to a "bona fide error" defense, and I decline to apply it here.

2    **D.**    *Kerr* **Factors**

3        I now consider whether the lodestar amount ($6,375) should be modified under the *Kerr*

4    factors. I note Watson's remarks that debt-collection cases are undesirable because "the amount in

5    controversy is usually too small to induce an attorney to commence litigation on a percentage

6    contingency."[38] This satisfies the tenth *Kerr* factor at the very least. I find that adjusting of the

7    lodestar in this instance is not necessary, and that Watson is awarded $6,375 in reasonable attorney's

8    fees.

9                              **Conclusion**

10        Accordingly, it is HEREBY ORDERED that Watson's Amended Motion for Attorney's Fees

11    **[Doc. 19] is GRANTED** in part as stated herein. **Watson is hereby awarded $6,375 in attorney's**

12    **fees.**

13        IT IS FURTHER ORDERED that the Clerk of Court shall enter an amended judgment in

14    favor of Marlo J. Watson and against NCO Financial Systems, Inc. in the following amounts:

15        $1,001.00 in damages (*see* Doc. 10);

16        $6,375.00 in attorneys fees; and

17        $445.00 in costs (*see* Doc. 18),

18        **For a total judgment of $7,821.00**.

19    DATED: April 29, 2015.

20                        _____

21                        Jennifer A. Dorsey
                         United States District Judge

22

23

24

25

26

27

28          [38] Doc. 19 at 4.